**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| ) | |
| PEGGY HERNANDEZ, as Executor of the ) | |
| Estate of CARLOS HERNANDEZ, Deceased, ) | |
| ) | CIVIL ACTION NO.: |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## COMPLAINT WITH JURY DEMAND

Plaintiff, PEGGY HERNANDEZ, as Executor of the Estate of CARLOS HERNANDEZ, Deceased, through undersigned counsel, sues the defendant, THE UNITED STATES OF AMERICA, demands a jury to hear the issues of this action, and alleges the following:

## INTRODUCTION

1.      This is a medical malpractice action against the defendant, THE UNITED STATES OF AMERICA, under the Federal Tort Claims Act, (28 U.S.C. §2671, *et seq*.) and 28 U.S.C. §1346(b)(1). The claim arises from negligence, professional malpractice, and wrongful death in connection with care provided to the decedent, CARLOS HERNANDEZ, by the Department of Veterans Affairs at St. Albans VA Medical Center in Queens County, New York and at the Brooklyn VA Medical Center, located at 800 Poly Place, Brooklyn, NY 11209.

2.      The claims herein are brought against the defendant pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, *et seq*.) and 28 U.S.C. §1346(b)(1), for money damages as compensation for personal injuries, pain and suffering, and wrongful death caused by the defendant's negligence.

3.      On January 8, 2021, the Surrogate's Court, Kings County, issued Letters Testamentary to PEGGY HERNANDEZ, and she was appointed the Executor of the Estate of the decedent, CARLOS HERNANDEZ.

4.      The plaintiff, PEGGY HERNANDEZ, as Executor of the Estate of the decedent, has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act with service of a Standard Form 95 on September 10, 2020.

5.      On September 30, 2020, the U.S. Department of Veterans Affairs, Office of General Counsel, sent correspondence indicating that the VA had six months from the date the claim was received to consider the claim before suit may be filed. Over six months has elapsed and, accordingly, suit may now properly be filed.

6.      Further, this suit is timely because the plaintiff timely served the SF95 on the Department of Veterans Affairs less than two years after the incident from which this suit arises.

7.      Because all conditions precedent have been satisfied, the plaintiff is now filing this Complaint pursuant to 28 U.S.C. §2401(b) after failing to receive from the Department of Veterans Affairs a notice of denial or any other determination as to the adjustment of this claim.

**PARTIES**

8.      The plaintiff, PEGGY HERNANDEZ, as Executor of the Estate of CARLOS HERNANDEZ, Deceased, is, and at all relevant times was a resident of Kings County, New York.

9.      The decedent was at all relevant times a resident of Kings County, New York.

10.      PEGGY HERNANDEZ is, and was at all relevant times, the decedent's lawful wife and the Executor of his Estate.

11.      The defendant, by and through its agency, the Department of Veterans Affairs, owns and operates the VA NY Harbor Healthcare System at three locations, one of which is known

as St. Albans VA Medical Center ("St. Albans"), located at 179-00 Linden Boulevard, Queens County, New York.

12.     The defendant, by and through its agency, the Department of Veterans Affairs, owns and operates the Brooklyn VA Medical Center ("Brooklyn VA"), located at 800 Poly Place, Brooklyn, NY 11209.

13.     At all relevant times, St. Albans held itself out to the plaintiff and the decedent as a provider of high-quality healthcare services, with the expertise necessary to maintain the health and safety of patients like the decedent.

14.     At all relevant times, Brooklyn VA held itself out to the plaintiff and the decedent as a provider of high-quality healthcare services, with the expertise necessary to maintain the health and safety of patients like the decedent.

15.     At all relevant times, the employees, agents, staff, administrators, operators, officers, and directors of St. Albans were employed by or acting on behalf of the defendant. The defendant is responsible for the negligent acts of its employees, agents, staff, administrators, operators, officers, and directors under respondeat superior.

16.     At all relevant times, the employees, agents, staff, administrators, operators, officers, and directors of Brooklyn VA were employed by or acting on behalf of the defendant. The defendant is responsible for the negligent acts of its employees, agents, staff, administrators, operators, officers, and directors under respondeat superior.

## JURISDICTION

17.     Jurisdiction is proper under 28 U.S.C. §1346(b)(1).

**VENUE**

18.     Venue is proper in that all the acts and omissions forming the basis of this Complaint occurred in Queens County and Kings County, which are properly within the Eastern District of New York.

**FACTUAL ALLEGATIONS**

19.     St. Albans generally holds itself out as a medical center dedicated to providing medical care to veterans, and it specifically holds itself out as having a specialized, residential geriatric program that provides comprehensive evaluation and safe, effective management of elderly, cognitively impaired veterans.

20.     The decedent was a United States veteran who was diagnosed with dementia in or about 2012.

21.     The decedent had been treating with at the Brooklyn VA since at latest 2006.

22.     On or about June 28, 2018, and because of the progression of his dementia, the decedent began residing at and receiving all his daily and medical care and treatment at St. Albans, under the assumption and belief that all St. Albans employees, and particularly all its physicians, nurses, attendants, aides, and other health care providers, were qualified to provide the necessary medical and residential geriatric care for a person in his physical and mental condition.

23.     At all relevant times, each physician, nurse, attendant, aide, and other health care provider was acting within the scope of their employment for St. Albans, as either agents or employees, when treating and/or providing any medical care or assistance with daily living tasks to the decedent.

24.     The decedent remained under the care of St. Albans' physicians, nurses, attendants, aides, and other health care providers from the time he began residing there in 2018 until the date of his death, on March 20, 2020.

25.     On or about June 28, 2018, and while still residing at St. Albans, the decedent became unable to feed himself and required assistance from St. Albans' employees and/or agents at every meal. Although requiring assistance with the physical act of feeding, the decedent remained on a regular diet and tolerated normal, adult-sized pieces of food. St. Albans' employees and/or agents fed the decedent all his meals except for some lunches. On those occasions when the St. Albans' employees and/or agents did not feed the decedent, such feeding was done by his wife, the plaintiff.

26.     On or about November 27, 2018, the plaintiff hired an aide, Rohini Mungol, to provide comfort and spend time with the decedent through an agency called Senior Helpers, NYC, and she would also assist with his feeding. Ms. Mungol acted as a companion to the decedent at St. Albans when the plaintiff could not be there.

27.     Ms. Mungol continued to assist with the decedent's feeding until she was informed by St. Albans' employees and/or agents that paid aides could no longer assist with feeding their charges unless and until they took an instructional feeding class.

28.     On or about February 27, 2020, Ms. Mungol, along with the plaintiff, attended a specialized training class administered by St. Albans to better learn how to assist the decedent with feeding. As part of this class, St. Albans provided Ms. Mungol with a five-page instructional document entitled, "Inservice Training for Meal Mate Companion / Family Member.". Before completing this training, Ms. Mungol was not permitted to feed the decedent – only a St. Albans employee and/or agent, or the decedent's wife, could assist with giving the decedent his meals.

29.     On March 20, 2020, Ms. Mungol was scheduled to spend time with the decedent. Upon her arrival at St. Albans, Ms. Mungol noted that the decedent had a fever and notified a St. Albans staff member. Ms. Mungol was instructed to remain outside of the room and she was not permitted to feed the decedent lunch that day.

30.     Upon information and belief, and as witnessed by Ms. Mungol, Shelley-Ann Williams, RN, of Unit 3B ("Nurse Williams"), a St. Albans employee and/or agent, fed the decedent lunch on March 20, 2020. The decedent's fever did not resolve, resulting in his transfer to the Brooklyn VA Medical Center, another campus of the VA NY Harbor Healthcare System. He arrived in triage at approximately 2:33 pm and was in the emergency room until he was admitted to the medical floor, 11West, at approximately 4:30 pm.

31.     The decedent's medical records from the facilities, which upon information and belief, based on the VA having an accessible electronic medical records system, were available to both those at St. Albans and those at Brooklyn VA. Those records contain entries indicating that the decedent had total dependence with eating such that one person would be required to give a physical assist. The decedent was required to have standard aspiration precautions, such as having his head upright at the midline and to intermittently alternate with liquids. Other precautions include for the assistant to ensure that the oral cavity is empty before the next bite, and to only feed the decedent when he was alert/accepting.

32.     After the decedent was admitted to the medical floor at approximately 4:30 pm, at approximately 5:01 pm that same day, the decedent was found to be unresponsive, pulseless, and blue in color, or cyanotic. Upon information and belief, CPR was administered and intubation was attempted but failed. The reason for the failure was because a bolus of chicken was discovered to be lodged deep in the decedent's airway. It was removed with forceps but during re-examination

with the glide scope, a second bolus was also identified. The airway was cleared and he was intubated. These pieces of food were described as appearing to look like chicken.

33.     Despite efforts to revive the decedent, he was pronounced dead at 5:38 PM on March 20, 2020.

34.     According to the reporting doctor, the decedent died from choking on a bolus of food.

35.     On March 21, 2020, an autopsy of the decedent was performed. The immediate cause of death was determined to be "asphyxia due to aspirational food bolus."

## **COUNT I – NEGLIGENCE**

36.     The plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

37.     The decedent was at all times under the exclusive care and control of the defendant either at St. Albans or Brooklyn VA on March 20, 2020.

38.     The defendant had a duty to provide ordinary care, and to exercise that standard and degree of care and skill required of health care providers, consistent with the expertise that the defendant presented to the community at large and the decedent in particular.

39.     The decedent was under the exclusive care and control of the defendant at all relevant times, and it was known to the defendant that certain precautions were required to be taken as to the decedent's feeding.

40.     Further, the defendant knew or should have known of all requirements associated with feeding protocols for the decedent.

41.     The defendant breached its duty of care to the decedent in that it failed to ensure that the decedent fed properly, such that proteinaceous food would not be lodged deep in the decedent's airway, thereby causing him to asphyxiate and die.

42.     At all relevant times to this Complaint, the defendant had a duty to hire competent employees, agents, staff, administrators, operators, officers, and directors to meet its standards of quality medical and geriatric care to its patients, including the decedent. The defendant knew, or should have known, that its medical staff was not properly trained and/or supervised in a manner necessary to provide a level of care to the decedent that met all applicable legal requirements, that demonstrated the standard and degree of care and skill required of competent health care providers, and was consistent with the expertise the defendant presented to the community at large, particularly as related to the care and treatment of patients with dementia and feeding protocols for patient's in the decedent's condition.

43.     The defendant breached its duty by negligently hiring incompetent, inexperienced, and/or unqualified employees, agents, staff, administrators, operators, officers, and directors.

44.     The defendant had a duty to retain only competent and adequately trained employees, agents, staff, administrators, operators, officers, and directors to meet its standards of quality care of its patients, including the decedent.

45.     The defendant breached its duty by negligently retaining incompetent, inexperienced, and/or unqualified employees, agents, staff, administrators, operators, officers, and directors.

46.     As a direct and proximate cause of the defendant's negligence, the decedent sustained serious and permanent personal injuries, was forced to endure horrific pain, suffering,

and mental anguish associated with prolonged choking and a blocked airway, resulting in his ultimate and untimely wrongful death.

47.     The acts and/or omissions set forth above would constitute a claim under the law of the State of New York.

48.     The defendant is liable pursuant to 28 U.S.C. §1346(b)(1).

49.     As a result of the negligence of the defendant, the plaintiff, as Executor of the Estate of the decedent, brings this action for damages, both general and special, in an amount that exceeds the jurisdictional limits of all other courts that would otherwise have jurisdiction, and. demands judgment against the defendant, plus all allowable interest, costs, and disbursements.

## COUNT II – MEDICAL MALPRACTICE

50.     The plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

51.     The decedent was at all times under the exclusive care and control of the defendant either at St. Albans or Brooklyn VA on March 20, 2020.

52.     The decedent relied on the care and skill of the defendant's employees, agents, and/or representatives, including its physicians, nurses, attendants, aides, and other health care providers for all medical and daily life care and treatment.

53.     At all relevant times, the defendant undertook the duty, by and through its agents, servants, and/or employees, to render medical and residential geriatric diagnosis, care, and treatment to the decedent in a skillful and careful manner and in accordance with the prevailing professional standards of medical and geriatric diagnosis, care, and treatment rendered in such cases by physicians, nurses, attendants, aides, and other health care providers in any similar medical community.

54.    At all relevant times, the defendant by and through its agents, servants, and/or employees, negligently breached its duty to the decedent by failing to care for him in accordance with the prevailing professional standards of medical and geriatric care and treatment, particularly with respect to following its own feeding protocols for persons suffering from dementia, as well as those feeding protocols widely accepted as the standard of care for a person in the decedent's condition.

55.    As a direct and proximate cause of the defendant's negligence, the decedent sustained serious and permanent personal injuries, was forced to endure horrific pain, suffering, and mental anguish associated with prolonged choking and a blocked airway, resulting in his ultimate and untimely wrongful death.

56.    The acts and/or omissions set forth above would constitute a claim under the law of the State of New York.

57.    The defendant is liable pursuant to 28 U.S.C. §1346(b)(1).

58.    As a result of the medical malpractice of the defendant, the plaintiff, as Executor of the Estate of the decedent, brings this action for damages, both general and special, in an amount that exceeds the jurisdictional limits of all other courts that would otherwise have jurisdiction, and. demands judgment against the defendant, plus all allowable interest, costs, and disbursements.

## COUNT III – WRONGFUL DEATH

59.    The plaintiff realleges and reincorporates each and every allegation above as if fully set forth herein.

60.    The decedent relied on the care and skill of St. Albans' employees, agents, and/or representatives, including its physicians, nurses, attendants, aides, and other health care providers for all of medical and daily life care and treatment as a residential, geriatric patient of St. Albans.

61.    At all relevant times, the defendant undertook the duty, by and through its agents, servants, and/or employees, to render medical and residential geriatric diagnosis, care, and treatment to the decedent in a skillful and careful manner and in accordance with the prevailing professional standards of medical and geriatric diagnosis, care, and treatment rendered in such cases by physicians, nurses, attendants, aides, and other health care providers in any similar medical community.

62.    At all relevant times, the defendant by and through its agents, servants, and/or employees, negligently breached its duty to the decedent by failing to care for him in accordance with the prevailing professional standards of medical and geriatric care and treatment, particularly with respect to following its own feeding protocols for persons suffering from dementia, as well as those feeding protocols widely accepted as the standard of care for a person in the decedent's condition.

63.    As a direct and proximate cause of the defendant's negligence, the decedent sustained serious and permanent personal injuries, was forced to endure horrific pain, suffering, and mental anguish associated with prolonged choking and a blocked airway, resulting in his ultimate and untimely wrongful death.

64.    The acts and/or omissions set forth above would constitute a claim under the law of the State of New York.

65.    The defendant is liable pursuant to 28 U.S.C. §1346(b)(1).

66.    As a result of the medical malpractice of the defendant, the plaintiff, as Executor of the Estate of the decedent, brings this action for damages, both general and special, in an amount that exceeds the jurisdictional limits of all other courts that would otherwise have jurisdiction, and. demands judgment against the defendant, plus all allowable interest, costs, and disbursements.

**PRAYER FOR RELIEF**

WHEREFORE, the plaintiff, PEGGY HERNANDEZ, as Executor of the Estate of

CARLOS HERNANDEZ, Deceased, does hereby pray that judgment be entered in her favor as

against the defendant, and damages plus interest, costs, and any other relief that this Court deems

just and proper be awarded to the plaintiff.

Respectfully submitted,
BUZIN LAW, P.C.
Attorneys for Plaintiff(s)
P.O. Box 529
Purchase, NY 10577
Tel: (212) 879-8100
Fax: (212) 879-8100

By: _____

ANDREW S. BUZIN
abuzin@buzinlaw.com